

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **GW EQUITY, LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **CASE NO. _____ DS0l2514** |
| § | |
| **VERCOR, LLC, THE BUSINESS** § | **3-07CV1128-P** |
| **OWNER, LLC, and DAVID L.** § | |
| **PERKINS, JR.,** § | |
| § | |
| **Defendants.** § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND**
**VERIFIED APPLICATION FOR INJUNCTIVE RELIEF**

Plaintiff GW Equity, LLC files this Original Complaint against Defendants Vercor, LLC,

The Business Owner, LLC and David L. Perkins, Jr. and for cause of action respectfully states:

### I.    PARTIES

1.     Plaintiff GW Equity, LLC ("GW Equity") is a Delaware limited liability company

with its principal office located in Dallas, Texas.

2.     Defendant Vercor, LLC ("Vercor") is a Georgia limited liability company with its

principal place of business located at 5590 Bunky Way, Atlanta, Georgia 30338. Defendant

Vercor can be served through its registered agent, Thomas E. Raines at 3500 Parkway Lane,

Suite 130, Norcross, Georgia 30092.

3.     Defendant The Business Owner, LLC ("The Business Owner") is an Oklahoma

limited liability company with its principal place of business located at 7010 S. Yale, Suite 120,

Tulsa, Oklahoma 74136. Defendant The Business Owner, LLC is the publisher of *The Business*

*Owner* newsletter and can be served through its registered agent David L. Perkins, Jr. at 7549 S.

Toledo Avenue, Tulsa, Oklahoma 74136.

---

Dockets.Justia.com

4.      Defendant David L. Perkins, Jr. ("Perkins") is a citizen of the State of Oklahoma. Upon information and belief, Perkins may be served at 7010 S. Yale, Suite 120, Tulsa, Oklahoma 74136-5702

## II.    JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Venue is appropriate in this judicial district, pursuant to 28 U.S.C. 1391(a), because the defamatory materials at issue in this case were distributed by Defendants within the Northern District of Texas, and the harm Defendants are causing GW Equity is occurring and will continue to occur within the Northern District of Texas.

## III.    FACTUAL ALLEGATIONS

**A.    GW Equity Suffers Damage from False Reports on Ripoffreport.com**

7.      Plaintiff GW Equity is a mergers and acquisitions firm based in Dallas, Texas that is in the privately held middle market assisting clients in mergers, acquisitions, and strategic growth. GW Equity has nationwide client base and has affiliate offices in Los Angeles, Chicago and New York.

8.      GW Equity is well known to both its clients and in the merger and acquisition business community. GW Equity has expended considerable effort and expense to develop and foster its image and reputation.

9.      On November 2, 2006, a series of false accusations against GW Equity began appearing on the website www.ripoffreport.com in the form of purported complaints by former clients and former employees of GW Equity.

10.    From November 2nd to November 29, five posts containing false accusations appeared on www.ripoffreport.com. No posts relating to GW Equity had ever before appeared on www.ripoffreport.com prior to these posts.

11.    As of the filing of this action, GW Equity has confirmed more than $200,000 in lost revenue arising out of these posts from customers who reneged on relationships with GW Equity after reading the false accusations. The false accusations were contained in posts purportedly authored by five different individuals identified as follows:

"Jim" from St. Paul, MN;
"Greg" from Rockwall, TX;
"Dave" from Rockford, MN;
"Greg" from NY, NY; and
"Tracy" from Dallas, TX

**B.    GW Equity Finds Admitted Source of False Reports**

12.    These false accusations contained certain confidential and proprietary information of GW Equity which demonstrates that the above-referenced posts were being created and published by someone with inside knowledge of GW Equity, most likely a former employee.

13.    After extensive research and investigation, Dickson Woodard, a former employee of GW Equity who had been terminated on October 31, 2006, two days before the posts began appearing, admitted that he had created and published all of these false accusations and had used the above-referenced aliases to avoid detection.

**C.    GW Equity Obtains Court Order to Force Removal of False Reports**

14.    On December 4, 2006, GW Equity filed a lawsuit styled *GW Equity, LLC v. Dickson Woodard*, Cause No. 06-12231, in the 116th Judicial District Court of Dallas County, Texas, seeking a temporary restraining order, temporary injunction, and permanent injunction to have these posts withdrawn from www.ripoffreport.com.

15.     On December 21, 2006, GW Equity and Dickson Woodard entered into an Agreed Order requiring that Mr. Woodard make a demand within 5 days to www.ripoffreport.com that all of the posts made by Mr. Woodard or at his direction be removed. A true and correct copy of the Agreed Order is attached hereto as Exhibit "1" to the Affidavit of Ryan Binkley, which is attached as Exhibit "A" to this Original Complaint. The specific posts covered by the Agreed Order and that Mr. Woodard was to demand the removal of were those made by Mr. Woodard using the five aliases listed in paragraph 11, above:

16.     Upon information and belief, Mr. Woodard has made the required demands to www.ripoffreport.com, but the operator of the website has failed to remove the posts.

17.     On June 1, 2007, GW Equity initiated separate litigation in the Northern District of Texas against the operators of ripoffreport.com to force the removal of the false and defamatory accusations. This litigation is styled *GW Equity, LLC v. Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson*, Civil Action No. 3-07CV0976-K.

18.     On June 14, 2007, a preliminary hearing was held in the *GW Equity, LLC v. Xcentric Ventures, LLC, et al.* case before United States District Judge Ed Kinkeade.

**D.     Defendants Re-Publish a False Report to Disparage GW Equity**

19.     Vercor is a competitor of GW Equity in the mergers and acquisitions industry.

20.     David L. Perkins, Jr. is publisher of *The Business Owner*, a newsletter that purports to provide "clear, concise, well-written, unbiased and thoroughly researched information that helps private business owners earn and keep more money."

21.     Perkins owns and controls Vercor, LLC and The Business Owner, LLC.

22.    *The Business Owner* newsletter is distributed to more than 30,000 businesses nationwide.  A true and correct copy of the Vercor webpage advertising a subscription to *The Business Owner* is attached as Exhibit "2" to the Affidavit of Ryan Binkley.

23.    In the May/June edition of *The Business Owner*, Defendants re-published part of the "Dave" in Rockford, Minnesota post that the Dallas County Court ordered removed, along with commentary it added to the post suggesting that GW Equity is a "scam."  A true and correct copy of the article is attached as Exhibit "3" to the Affidavit of Ryan Binkley.

24.    David L. Perkins, Jr. is the author of the full article entitled, "Scam Alert: GW Equity?"

25.    Defendants did not attempt to confirm the veracity of the contents of the post with GW Equity prior to publication and republication of the false, disparaging and misleading statements in the article about GW Equity.

26.    For example, the article includes the following statement, after suggesting that GW Equity is a continuation of Great Western Business Brokers, a business completely unrelated to GW Equity which has no common ownership:

> "As one of GW Equity's own reps explains, Great Western Business Brokers 'basically ran out of people to screw – so it reinvented itself and changed its name to GW Equity.'"

27.    This statement is false, completely unsupported, and made as a statement of fact. Nowhere does the article explain who this alleged former employee is, when they made this alleged statement, or what this statement is based upon.

28.    The May/June edition of *The Business Owner* newsletter was distributed to more than 30,000 businesses nationwide as indicated in Exhibit 2 to the Affidavit of Ryan Binkley.

29.    Defendants, by their actions described herein, have acted in a conspiracy to injure GW Equity, a competitor of Vercor.

**E.    GW Equity Is Being Irreparably Harmed by the Newsletter**

30.    On May 25, 2007, a Senior Business Analyst was informed by a potential Oklahoma customer of GW Equity that it was not interested in pursuing a business relationship with GW Equity due to an article in "The Business Owner Vercor Magazine" suggesting that GW Equity is a "scam."

31.    This is just one example of what GW Equity believes are many businesses that have been wrongly dissuaded from working with GW Equity as a result of this defamatory article.

32.    The Business Owner, LLC, Vercor, and Perkins are jointly and severally liable for any and all damages that arise as a result of publishing and disseminating the false information contained in the newsletter.

#### IV.    CAUSES OF ACTION

**A.    Defamation Against The Business Owner, LLC & David L. Perkins, Jr.**

33.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

34.    The statements written by David L. Perkins and published in *The Business Owner* relating to GW Equity are false.  The statements pertain to GW Equity by intentionally making one or more false, misleading, disparaging and/or defamatory comments and allegations concerning GW Equity's executives, management, employees, business methods, activities, policies, and practices.

35.    The Business Owner, LLC and David L. Perkins, Jr. publicly communicated false, misleading, disparaging and/or defamatory comments and allegations to third parties by publishing and republishing such comments and allegations via the newsletter.

36.    The Business Owner, LLC and David L. Perkins, Jr. have published false, misleading, disparaging and/or defamatory comments and allegations to 30,000 third parties on the newsletter knowing the same were false or with a high degree of awareness that the same were probably false, or with a reckless disregard for the truth.

37.    The Business Owner, LLC and David L. Perkins, Jr. published false, misleading, disparaging and/or defamatory comments and allegations with the intent to damage the business, goodwill, and professional reputation of GW Equity.

38.    The Business Owner, LLC and David L. Perkins Jr.'s false, misleading, disparaging and/or defamatory comments and allegations have caused general defamation damages to GW Equity by exposing it to contempt and ridicule by the third parties receiving such comments and allegations.

39.    GW Equity has also suffered special damages in the form of financial loss resulting from the effect of The Business Owner, LLC and David L. Perkins, Jr.'s statements, relating to, among other things, lost clients.

**B.    Business Disparagement Against The Business Owner, LLC & David L. Perkins, Jr.**

40.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

41.    The acts and conduct of The Business Owner, LLC and David L. Perkins, Jr. as alleged above in this Petition constitute injurious falsehood or business disparagement under Texas law.

42.   The Business Owner, LLC and David L. Perkins, Jr. published false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services.

43.   The Business Owner, LLC and David L. Perkins, Jr.'s false, misleading, disparaging and/or defamatory words, statements, and comments were published without GW Equity's consent and with a lack of privilege.

44.   The Business Owner, LLC and David L. Perkins, Jr. published the false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services with knowledge of the falsity of the words, statements, or comments or with reckless disregard for the words, statements, and comments' falsity.

45.   The Business Owner, LLC and David L. Perkins Jr.'s conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients.  Further, their publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings

**C.    Conspiracy to Commit Defamation & Business Disparagement**

46.   GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

47.   The Defendants have a common design by means of concerted action to publish in The Business Owner newsletter false and misleading statements regarding GW Equity.

48.   The Defendants have developed, created and published in The Business Owner newsletter such false and misleading statements.

49.    This conspiracy was implemented in order to harm GW Equity, a competitor of Vercor and Perkins, Jr. in the mergers and acquisitions market by injuring GW Equity's reputation for honesty and integrity. This conspiracy was for the pecuniary gain of Vercor and Perkins, who owns The Business Owner, LLC and determines editorial content of the newsletter.

50.    These actions constitute a civil conspiracy to create, solicit, and publish false, misleading, disparaging and/or defamatory statements regarding GW Equity. These actions have caused GW Equity to incur loss and damages and entitle GW Equity to compensatory and punitive damages in an amount to be determined at trial.

**D.    Injunctive Relief (Request for Temporary Restraining Order and Application for Temporary and Permanent Injunction)**

51.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

52.    Vercor, The Business Owner, and Perkins have published, republished and disseminated numerous false and misleading statements of facts concerning GW Equity, its executives, and its business and have damaged the reputation and goodwill of the company.

53.    Vercor, The Business Owner, and Perkins have conspired to publish and disseminate these false and misleading statements for the economic benefit of Vercor and Perkins.

54.    GW Equity has been and will continue to suffer immediate and irreparable harm if Defendants are not enjoined from publishing, republishing and/or disseminating false, disparaging, and/or defamatory statements regarding GW Equity. Despite requests by Plaintiff to cease publication and dissemination of the false statements and issue a retraction of same, Defendants have failed and refused to do so.

55.    Defendants' conduct in publishing and disseminating the false and disparaging comments about GW Equity has adversely impacted Plaintiff's business opportunities and has interfered with GW Equity's existing and prospective client relationships.  This adverse impact was exactly the result that Defendants were expecting when they created and published the article.

56.    There is a substantial likelihood that GW Equity will prevail on the merits of the claims asserted herein.  Any potential harm associated with the entry of a restraining order and preliminary injunction is outweighed by the injury and harm to GW Equity's goodwill and reputation.

57.    Issuance of a restraining order and a potential injunction will not adversely affect the public interest and public policy because the public interest is served by preventing the publication and dissemination of false and misleading statements by businesses about their competitors.

58.    Plaintiff requests that the Court enter an ex parte Temporary Restraining Order, and after a hearing and final trial hereof, a temporary injunction and permanent injunction restraining Defendants from the following:

A.    Publishing, republishing, transmitting, communicating and/or disseminating, directly or indirectly, any false, misleading, disparaging and/or defamatory statements or comments regarding GW Equity, its services, reputation, officers, directors or employees.

B.    From publishing, republishing and/or distributing the May/June edition of "*The Business Owner*" newsletter that contains the "Dave" in Rockford,

Minnesota post, along with commentary suggesting that GW Equity is a "scam."

C.      From publishing, republishing and/or disseminating any statements, comments or content regarding GW Equity that was posted on the websites www.ripoffreport.com and www.badbusinessbureau.com and which was ordered removed from such websites by Court Order in *GW Equity, LLC v. Xcentric Ventures, LLC, et al.*, Civil Action No. 3-07CV0976-K, pending in the United States District Court, Northern District of Texas, Dallas Division.

WHEREFORE, PREMISES CONSIDERED, Plaintiff GW Equity, LLC requests that Defendants Vercor, LLC, The Business Owner, LLC, and David L. Perkins, Jr. be cited to appear and answer herein, and upon final trial hereof recover from Defendants:

- Actual damages;
- Punitive damages;
- Injunctive relief as requested herein;
- Attorneys' fees;
- Costs of court;
- Prejudgment and post-judgment interest; and
- Such other and further relief, both at law and in equity, that Plaintiff may be justly entitled.

Respectfully submitted,

_____
Mark L. Johansen
State Bar No. 10670240
Michael K. Hurst
State Bar No. 10316310
Jason A. Copling
State Bar No. 24036400

**GRUBER HURST JOHANSEN & HAIL LLP**
1445 Ross Avenue, Suite 4800
Dallas, Texas 75202
214/855-6800 (main)
214/855-6808 (facsimile)

**ATTORNEYS FOR PLAINTIFF
GW EQUITY, LLC**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **GW EQUITY, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO._____** |
| | § | |
| **VERCOR, LLC, THE BUSINESS** | § | |
| **OWNER, LLC, and DAVID L.** | § | |
| **PERKINS, JR.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>AFFIDAVIT OF RYAN BINKLEY</u>

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

On this day, before the undersigned authority, personally appeared Ryan Binkley, known to me to be the person whose name is subscribed hereto and under oath states:

1.      My name is Ryan Binkley. I am over the age of 21, have never been convicted of a felony or crime of moral turpitude, and am fully competent to make this Affidavit. The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2.      I am currently employed as President of GW Equity, LLC ("GW Equity"). Based on my service in this capacity, I am personally familiar with the facts stated in this Affidavit.

3.      Attached as Exhibit "1" to this Affidavit is a true and correct copy of an Agreed Order entered into in the lawsuit *GW Equity, LLC v. Dickson Woodard*, Cause No. 06-12231, in the 116th Judicial District Court of Dallas County, Texas.



**EXHIBIT**

tabbies

**A**

4.    Attached as Exhibit "2" to this Affidavit is a true and correct copy of a Vercor, LLC webpage advertising a subscription to *The Business Owner*.

5.    Attached as Exhibit "3" to this Affidavit is a true and correct copy of the article in The Business Owner May/June 2006 newsletter titled "Scam Alert: GW Equity?"

6.    Attached as Exhibit "4" to this Affidavit is a true and correct copy of a post on ripoffreport.com by "Dave" from Rockford, Minnesota which fraudulently disparages GW Equity.

7.    Attached as Exhibit "5" to this Affidavit is a true and copy of the Complaint (without exhibits) in the lawsuit *GW Equity, LLC v. Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson*, Civil Action No. 3-07CV0976-K, which is pending in United States District Court for the Northern District of Texas.

8.    I have read *Plaintiff's Original Complaint and Verified Application for Injunctive Relief* in the above-styled action, and each fact stated therein is within my personal knowledge and is true and correct.

9.    Plaintiff GW Equity is a Delaware Limited Liability Company with its principal place of business in Dallas, Texas.

10.    Plaintiff GW Equity is a mergers and acquisitions firm based in Dallas, Texas that is in the privately held middle market assisting clients in mergers, acquisitions, and strategic growth. GW Equity has a nationwide client base and has affiliate offices in Los Angeles, Chicago and New York.

11.    On November 2, 2006, a series of false accusations against GW Equity began appearing on the website www.ripoffreport.com in the form of purported complaints by former

clients and former employees of GW Equity. These false accusations create an appearance that GW Equity had engaged in dishonest business practices.

12.    From November 2 to November 29, five posts containing false accusations appeared on www.ripoffreport.com. The false accusations were contained in posts purportedly authored by five different individuals identified as follows:

"Jim" from St. Paul, MN;
"Greg" from Rockwall, TX;
"Dave" from Rockford, MN;
"Greg" from NY, NY; and
"Tracy" from Dallas, TX

*See* Exhibit 4 to this Affidavit. GW Equity has confirmed more than $200,000 in lost revenue resulting from these posts as a result of customers who discontinued their relationships with GW Equity after reading the false accusations.

13.    In December 2006, GW Equity filed a lawsuit styled *GW Equity, LLC v. Dickson Woodard*, Cause No. 06-12231, in the 116th Judicial District Court of Dallas County, Texas, seeking a temporary restraining order, temporary injunction, and permanent injunction to have the posts withdrawn from www.ripoffreport.com.

14.    On December 21, 2006, GW Equity and Dickson Woodard entered into an Agreed Order requiring that Mr. Woodard make a demand within 5 days to www.ripoffreport.com that all of the posts made by Mr. Woodard or at his direction be removed. *See* Exhibit 1 to this Affidavit.

15.    Upon information and belief, Mr. Woodard made the demand that the subject posts be removed from www.ripoffreport.com. The operator of www.ripoffreport.com has failed to remove the posts.

16.     On June 1, 2007, GW Equity initiated separate litigation in the Northern District of Texas against the operators of ripoffreport.com to force the removal of the false accusations. The litigation is styled *GW Equity, LLC v. Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson,* Civil Action No. 3-07CV0976-K. *See* Exhibit 5 to this Affidavit.

17.     In the May/June edition of *The Business Owner,* in an article titled "Scam Alert: GW Equity?," the Defendants re-published a portion of one of the posts that the Dallas County Court and the Dallas Federal Court ordered removed from www.ripoffreport.com. The Defendants also included their own commentary suggesting that GW Equity is a "scam." *See* Exhibit 3 to this Affidavit.

18.     Defendants did not attempt to confirm the veracity of the contents of the post with GW Equity prior to publication.

19.     On May 25, 2007, a Senior Business Analyst employed by GW Equity was informed by a potential Oklahoma customer of GW Equity that it was not interested in pursuing a business relationship with GW Equity due to an article in "The Business Owner Vercor Magazine" suggesting that GW Equity is a "scam."

20.     This is just one example of what GW Equity believes are many businesses that have been wrongly dissuaded from working with GW Equity as a result of this article.

21.     The false and misleading article published by Defendants in *The Business Owner* has disrupted GW Equity's ability to conduct business.  As many as 30,000 potential customers of GW Equity have received this article, which contains very damaging and false accusations.

22.     If the Defendants are not forced to cease publication of the article and issue a retraction of the article and notify all of the customers who received the May/June issue of *The*

*Business Owner* newsletter about the retraction, GW Equity will continue to suffer immediate and irreparable harm.  The Defendants have refused to comply with GW Equity's requests to issue a retraction of the article.  Because GW Equity does not have the ability to monitor every person who reads the article and explain that the statements included therein are false, GW Equity will continue to lose potential clients at an increasing rate.

23.    GW Equity does not have an adequate remedy at law for money damages in the event that the defamatory article is not retracted.

24.    Defendants will not be prejudiced at all by retracting the false and misleading article because there is no evidence that they will suffer any damages.

25.    Unless the Court grants the requested relief, GW Equity will be irreparably harmed because the false and defamatory information published by Defendants has caused irreparable and irreversible harm to GW Equity's reputation and client relationships.

26.    I affirm under penalty of perjury that, to the best of my knowledge and belief, the above is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.



RYAN BINKLEY

Subscribed and sworn to before me, this _21_ day of June, 2007.

JERRY G. HILL
MY COMMISSION EXPIRES
MARCH 2, 2008

Notary Public in and for the State of Texas

My commission expires: _03/02/08_

**AFFIDAVIT OF RYAN BINKLEY**                                                        PAGE 6

CAUSE NO. 06-12231

| | | |
|---|---|---|
| GW EQUITY, LLC, | § | IN THE DISTRICT COURT |
|    Plaintiff | § | |
| | § | |
| v. | § | 116th JUDICIAL DISTRICT |
| | § | |
| DICKSON WOODARD, | § | |
|    Defendant | § | DALLAS COUNTY, TEXAS |

### AGREED ORDER GRANTING PLAINTIFF'S PETITION FOR TEMPORARY INJUNCTION

On the 20th day of December 2006, there was presented to this Court a petition for temporary restraining order, temporary injunction, and permanent injunction with respect to the above-referenced matter. At that time, the parties reached an agreement for a temporary injunction which was read unto the record of the 116th Judicial District Court. The agreed order for temporary injunction stipulated as follows:

IT IS ORDERED THAT Defendant Woodard shall send to Ed Magedson, owner of www.ripoffreport, a written demand that any and all publications made by Defendant Woodard or published at Defendant Woodard's direction be removed from www.ripoffreport.com within 5 days of the signing of this order.

IT IS FURTHER ORDERED that this demand to Ed Magedson by Defendant Woodard shall be made via email and certified letter return receipt requested.

IT IS FURTHER ORDERED that, without stating affirmatively that the following postings were published by Defendant Woodard or published at Defendant Woodard's direction, that the following postings relating to Plaintiff are ordered to be removed from the website www.ripoffreport.com:

- Jim from St. Paul, MN;
- Greg from Rockwall, TX;
- Dave from Rockford, MN;
- Greg from NY, NY; and
- Tracy from Dallas, TX.

IT IS FURTHER ORDERED that a temporary injunction be issued against Defendant Woodard, restraining Defendant Woodard, his agents, servants and employees from any and all attempts to misappropriate confidential information, proprietary information, and any trade secrets of the Plaintiff.

Agreed Temporary Injunction
*GW Equity v. Woodard*
Page 1 of 2



EXHIBIT
1

Def. Appx. 0068

IT IS FURTHER ORDERED that a temporary injunction be issued against Defendant Woodard, restraining Defendant Woodard from any and all contact with present employees, officers, directors, managers, and corporate counsel in an attempt to obtain proprietary information, trade secrets, or other confidential information regarding Plaintiff and its business.

IT IS FURTHER ORDERED that a temporary injunction be issued against Defendant Woodard, restraining Defendant Woodard from misappropriation, publication, or other utilization of confidential propriety information obtained during his employment or after his employment ceased.  This does not limit Defendant Woodard's right to speak to independent counsel and/or law enforcement personnel.

IT IS FURTHER ORDERED that a temporary injunction be issued against Defendant Woodard, restraining Defendant Woodard from coming within 500 feet of any of Plaintiff's business offices.

IT IS FURTHER ORDERED that Plaintiff's $1,000.00 bond be refunded to Plaintiff.


SIGNED ON THIS 21st day of December, 2006 at 4:00 o'clock A.M./P.M.

Robert H. Frost

JUDGE PRESIDING


Agreed Temporary Injunction
*GW Equity v. Woodard*
Page 2 of 2

The Business Owner - publication written by national merger and acquisition consultants to assist owners with selling a business and maximiz... Page 1 of 1





VERCOR

Investment Banking

Home | Services | Team | Past Deals | Current Offerings | Publications | Contact Us | Partner Login

**The Business Owner Newsletter**

*The Business Owner*, with over 30,000 paid subscribers, is the newsletter of choice for owners of private companies.

*The Business Owner* delivers clear, concise, well-written, unbiased and thoroughly researched information that helps private business owners earn and keep more money.

**To receive information on how to subscribe today call us at 800-634-0605.**





Right click the link below and choose Save target as... to download a sample of the *The Business Owner*.

Powered by Performance Media

|Vercor Home | Pre-Sale Business Planning | Determining Business Value | Our Services | Case Histories | Publications | More Business Sale Info | Current Business Offerings | Financial Advisors | Contact Us

EXHIBIT
tabbies®
2

http://www.vercoradvisor.com/thebusinessowner.html

5/17/2007

**SCAM ALERT**

# Scam Alert: GW Equity?

In the January-February 2003 issue of *The Business Owner Journal*, we warned about business brokers:

> *"Beware of persons or companies that represent they can sell your business for a very high value — provided you pay a substantial up-front fee. These companies prey on the hopes, dreams and desperation (at times) of business owners and ask for $8,000 to $40,000 in a single up-front payment — before they have produced anything! They often tout having a pipeline of overseas or foreign buyers — ones you conveniently cannot verify."*

One of the pioneers in this game was Geneva Companies of Irvine, California. Geneva was simply exceptional in its ability to put on the look and feel of a Wall Street investment bank.

Its business model was to mail "we have a buyer for your business" letters to business owners. When business owners responded, they were invited to a daylong seminar that wowed them with superlatives about Geneva's expertise, experience and track record for getting high-value deals done for run-of-the-mill businesses and business owners. At the end, attendees were told they had just this one chance to jump on the money train. The price of the ticket was $40K — just a fraction of the money they were promised they soon would earn. Many paid up.

The bad news is that business owners are people, too, and they don't like to look dumb. They tended not to tell the world when they'd been taken. So scams like these tend to have longer lives then they should. But eventually Geneva was the subject of a class action lawsuit. Although it never admitted guilt, it paid $45 million in settlement and seems to have faded away.

**Equico (RSM Equico)** was next. Started by the original founder of Geneva Companies, Equico had the same business model. It too seems to have made a ton of money and was very successful. Whether it is still doing this thing, I don't know. Its Web site is still up, but word on the street is that Equico is but a shadow of its former self. Over time, companies like this run out of steam.

**GW Equity**, headquartered in Dallas, Texas, may be the new kid on the block. Some have said that GW Equity is the reinvention of Great Western Business Brokers, also in Dallas and the subject of a very critical exposé in *Inc.* Magazine (see *For Sale: The American Dream*). Its business model was different from that of Geneva and Equico. Great Western would call business owners and tell them they had a buyer (or buyers) for their businesses. If it could get an appointment, Great Western would send a commission-only sales rep to "sign 'em up." The rep would value the business "on the spot" and, no doubt, value it *very* high — then explain that for, say, $8,000, it would hook up the business owner with a buyer. Of course, almost nothing ever happened except the check clearing the bank.

As one of GW Equity's own reps explains, Great Western Business Brokers "basically ran out of people to screw — so it reinvented itself and changed its name to GW Equity."

With Geneva gone and Equico on the ropes, GW has rebranded itself as a "Wall Street-style investment bank" and has done all the

things necessary to display the appearance of credibility. It flashes bios of executives from Fortune 500 companies and with advanced degrees (or better, divinity degrees) from respected schools.

To be sure, GW Equity may not have been "doing its thing" long enough to have gathered victims willing to admit they were fooled. But a recent Internet search found at least one apparent victim. Here's an abbreviated version of his posting:

> *"I was contacted by GW Equity. They assured me that a research team had qualified my company and that they had some investors that were specifically interested in my company. Incidentally, they had two experts that happened to be in my area. I should drop everything and go to a seminar. I did.*
>
> *To take advantage of the opportunity, I needed to pay $29,000. In short, I know now that I was taken. I don't know who to sue, but you bet your backside I am looking into it."*
>
> Dave
> Rockford, Minn.

Is David in Rockford telling the truth? Is this article factual? You should decide for yourself, but always keep in mind — *if it sounds too good to be true, it probably is.*

Talented and competent business brokers charge up-front fees. But exercise great caution before paying it all in a single check on Day 1.

**Disclosure:** *The owner, editor and publisher of this publication is David L. Perkins, Jr. He consults on the purchase and sale of businesses. To that end, he could be biased!* ❏

**FINANCE**

# Purchase Contracts: Big Money or Big Mistake?

You've been approached by a vendor to sign an exclusive, long-term purchase contract. Upon execution, they'll cut you a big check. Cash money.

Before you sign, remember what mama always told you, there's no such thing as a free lunch.

Purchase agreements have done a whammy on the quick-lube industry. Just ask industry veteran Michael Baynes. He consults on the purchase, sale and valuation of quick lubes throughout North America. Many people around the industry wish they'd never signed one. The up-front money went quickly and then profit margins suffered for years on end.

Of course, it's possible to get a good deal, but the odds are against it. Before you sign one, have it reviewed by an attorney. Also, compare current prevailing prices, escalation clauses, pass-throughs, inflation adjustments, up-front fees, cancellation fees and penalties. And a pretty accurate crystal ball might help you see where future prices are going. ❏

EXHIBIT

tabbies

3

..by consumers, for consumers

RIP-OFF          Don't let them get away with it.
                 Make sure they make the Rip-off Report

a service of
bad businessbureau.com  REPORT.COM







About the ads below...

CL
HE

Presc
Drug C
O

Are you a n
prescription
or do you h
prescription
through any
organizatio

• SaveRx
• MatureR
• Coventry
• Humana
• Unicare
• HealthNe
• SierraRx
• United H
• Veterans

If so, you m
unknowingl
injured finar
therefore be
reimburser
losses.

To see if yo
injured and
you are elig
member of
action to re
losses plea
classaction@e

www.Zoom
Articles, I
casting
mo
agents, a
dire
Learn how
y
modeling p
av
scams in th

E-mail to a Friend
Printer Friendly Version

Submitted: 11/7/2006 4:00:19 PM
Modified: 12/8/2006 2:03:19 PM

Category:
**Financial Services**

## Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K Dallas Texas *UPDATE EX-employee responds ..GW Equity stands behind its name

Company
**Gw Equity, Geneva Corporate Finance**
Address:
**14241 Dallas Pkwy #600**
**Dallas Texas 75254**
**U.S.A.**
Phone Number:
**877-213-1797**
Fax:

I was contacted by GW Equity an investment banking firm that maintained that they were the largest M&A Firm in the country. They assured me that a research team had qualified my company and that they had some investors that were specifically interested in my company and asked if I might be interested in selling off all or a portion of my company. I told them that "everything was for sale fro a price and that I was listening."

They told me that they had 1600 Fortune 500 Companies that were in their back pocket and that they could sell any company if the business owner could get his figures straight and represent the companies "Value correctly" or something. It was a sellers market but this opportunity would only last as long as the interest was there.

Incidentally, they also had two experts that happened to be in my area and if I

Rip-off Report Corporate
Advocacy Business
Remediation & Customer
Satisfaction Program; ED
Magedson, Founder Rip-
off Report explains how
this program works to
benefit consumers &
businesses

EXHIBIT
4

**CLICK HERE**

**WANTED DEAD BEAT** DADS & MOMS PUT YOUR DEADBEAT **SPOUSE ON TV!!!** So maybe you can finally COLLECT $$$ **WANTED** Moms or dads who are owed more than six months child support by a deadbeat spouse... After you filed your Rip-off Report email us at EDitor@ripoffreport.com *Rip-off Report will forward your filed Report to Producers.*

Add pictures to your Rip-off Report

understood this was the most important sale my business would ever transact that I should drop everything and go to this seminar. I did drop everything and went.

Around noon, after explaining that what I was attempting to do was impossible without them, they told me that the simple retainer would cost me $29,000. I already have an evaluation of what my company is worth through a company that is immensely more credible than this GW Equity place so I did not even need that. What's more there was NO discussion about these "interested" investors and the only way I could find that out was to go ahead and pay them the $29k so they could get started…Get started on what? I thought they already had interested investors, so what would be the big deal? They also assured me that "By law" they could not guarantee the sale of my company no matter how much I paid them. So I got took. That I can take.

But what I cant take is the fact that this seminar cost me an entire day (Approx $5,000) that I wasted and that I cannot get back. I don't know who to sue, but you bet your backside I am looking into it.

**Dave**
**Rockford, Minnesota**
**U.S.A.**

If you would like to see more Rip-off Reports™ on Gw Equity, Geneva Corporate Finance, please use the search box below

Gw Equity, Geneva Corporate Finance     [ Search ]

In order to assure the best results in your search:
- *Keep the name short & simple, and try different variations of the name.*
- *Do not include ".com", "S", "Inc.", "Corp", or "LLC" at the end of the Company name.*
- *Use only the first/main part of a name to get best results.*
- *Only search one name at a time if Company has many AKA's.*

Click here to go to our *advanced search* page.



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN – 1 2007

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| GW EQUITY, LLC, | § |
| | § |
| PLAINTIFF, | § |
| | § |
| v. | § |
| | § |
| XCENTRIC VENTURES, LLC, | § |
| WWW.RIPOFFREPORT.COM, | § |
| WWW.BADBUSINESSBUREAU.COM, | § |
| and EDWARD MAGEDSON, | § |
| | § |
| DEFENDANTS. | § |

CIVIL ACTION
No. 3 – 07 C V 0 9 7 6 – K

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DAMAGES AND EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff GW Equity, by its undersigned attorneys, for its Complaint against the Defendants Xcentric Ventures, LLC, www.ripoffreport.com, www.badbusinessbureau.com, Edward Magedson (collectively, the "Defendants"), for damages and emergency application for injunctive relief under the laws of the United States and the State of Texas alleges as follows:

### I.    SUBJECT MATTER JURISDICTION

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of jurisdiction of citizenship and the matter in controversy, exclusive of costs and interests, exceeds the sum or value of seventy-five thousand dollars.  In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because claims arise under 18 U.S.C. §§ 1962(c), 1962(d), and 1964 of the Racketeer Influenced and Corrupt Organizations Act (RICO).

2.    This Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of the State of Texas pursuant to 28 U.S.C. § 1367(a)

EXHIBIT
tabbies®
5

and of pendant jurisdiction and any other applicable law, since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## II.    VENUE

3.    Venue is proper in the Northern District of Texas and this Court pursuant to 28 U.S.C. § 1391 because the Defendants have committed and continue to commit tortious acts in the State of Texas and this district.

## III.    PARTIES AND PERSONAL JURISDICTION

4.    Plaintiff, GW Equity, LLC, is a Delaware limited liability company with its principal offices located in Dallas, Texas. GW Equity is a mergers and acquisitions firm in the middle market assisting clients in mergers, acquisitions, and strategic growth. With over three hundred professional advisors, GW Equity brings a strategic domestic and international buying community to the middle market and does business in this district.

5.    Upon information and belief, Defendant Xcentric Ventures, LLC ("Xcentric"), is a limited liability company organized and existing under the laws of Arizona with its principal office located in Arizona. Defendant is a citizen of Arizona and no other state. Defendant transacts business in this district through the Internet, by the domains names of ripoffreport.com and badbusinessbureau.com which are registered to Xcentric, and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280 and/or 8833 S. JB Road, Reevis Mountain, Gila County, AZ 85545. Upon information and belief, Defendant Xcentric is, or will be subject to the jurisdiction of this Court.

6.      Upon information and belief, Defendant www.ripoffreport.com is an unknown business entity whose owner and/or speaker is Edward Magedson. www.ripoffreport.com also is an Internet website address and platform where, upon information and belief, Defendant transacts business in this district through the World Wide Web and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280.    Upon information and belief, Defendant www.ripoffreport.com is, or will be subject to the jurisdiction of this Court.

7.      Upon information and belief, Defendant www.badbusinessbureau.com is an unknown business entity whose owner and/or operator is Edward Magedson. www.badbusinessbureau.com also is an Internet website address and platform where, upon information and belief, Defendant transacts business in this district through the World Wide Web and may be served through its owner and/or operator at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe, Maricopa County, AZ 85280. Upon information and belief, Defendant www.badbusinessbureau.com is, or will be, subject to the jurisdiction of this Court.

8.      Edward Magedson, an individual who, upon information and belief, is, and at all relevant times was the owner and/or operator of www.ripoffreport.com and www.badbusinessbureau.com. In addition, Mr. Magedson has used www.ripoffreport.com and www.badbusinessbureau.com to conduct and direct the unlawful and tortious conduct described herein within the jurisdiction of this Court. Upon information and belief, Mr. Magedson may be served at 1138 S. Rose, Mesa, Maricopa County, AZ 85204, and/or P.O. Box 310, Tempe Maricopa County, AZ 85280. Upon information and belief, Mr. Magedson is, or will be, subject to the jurisdiction of this court.

9.     The acts of defamation, interference with business relationships, business disparagement, conspiracy, and other wrongful acts alleged in this Complaint occurred, arose and were directed in whole or part in the Northern District of Texas.

## IV.    FACTUAL ALLEGATIONS

10.     Founded in 1987, GW Equity Group, Inc. is the parent company of GW Equity, LLC. GW Equity, LLC is a mergers and acquisitions firm in the middle market assisting clients in mergers, acquisitions, and strategic growth. With over three hundred professional advisors, GW Equity brings a strategic domestic and international buying community to the middle market. GW Equity engages in the business of consulting middle-market business owners who are contemplating a sale or seeking merger and acquisition opportunities. GW Equity conducts educational or informational conferences or seminars that provide business owners with an overview of the processes of how and when to sell a private middle-market business for maximum value. GW Equity has more than three hundred professional advisors located in offices nationwide and consults thousands of clients each year.

11.     Through its offices and professional advisors, GW Equity has become well-known to both its clients and the general public. GW Equity has gone to considerable expense and effort to develop and maintain its image to potential companies who might engage its services. As a means to promote its products and services, GW Equity created Internet websites to enable consumers to learn about its programs, and to provide a conduit for prospective and current clients to learn about its services and register for upcoming conferences. Clients use Internet search engines to locate GW Equity's website. GW Equity thus relies heavily on Internet search engines to direct potential clients to its websites.

12.    The Defendants own and/or operate websites located at www.ripoffreport.com and www.badbusinessbureau.com (collectively, the "Websites") as centralized websites for publishing and posting alleged fraudulent business practices. Upon information and belief, the Defendants operate these Websites for profit. Magedson and Xcentric actively control and maintain the Websites, together with the assistance of one or more unknown agents.

13.    The Websites hold themselves out to the public as a "worldwide consumer reporting Website and Publication, by consumers for consumers" and purport to expose companies and individuals who "ripoff" customers. A true and correct copy of the Defendants' homepage is attached hereto as Exhibit 1 and incorporated herein by reference.

14.    The Defendants actively solicit and receive complaints from all over the country. The Defendants have edited and published well over 13,241 reports directed at Texas companies, some of which were purportedly authored by Texas residents.

15.    Due to the aggressive marketing activities of the Defendants, existing and potential clients of GW Equity receive search engine results which feature lists to one or more reports published on the Websites. Clients that follow the links to the Websites are referred to the Websites containing information regarding GW Equity's business and reputation which is false, misleading, disparaging and/or defamatory. Additionally, the reports on the Websites contain discussions of intellectual property and proprietary information that clearly belong to GW Equity. Indeed, the information posted on the Websites contains facts that would only be known to GW Equity and serves to gives its competitors an unfair advantage now that the information has been revealed. The information contained in the so-called "Rip-off Reports" on the Websites receive high placement on Internet search engines because Defendants include GW Equity's name in the caption of pages on the Websites, in page titles, and in metatags.

16.    The Defendants do not substantiate the source or accuracy of the information published and posted on the above referenced Websites, including but not limited to, information published and posted regarding GW Equity's business practices.  Upon information and belief, the Defendants author the posts on the Websites, including but not limited to, information regarding GW Equity and then publish them for the public to view.  *See* Exhibit 2, Deposition Transcript of Dixon Earl Woodward, Vol. I, 146:24-149:3; 183:6-8; 237:18-238:11.   The Defendants exercise editorial control over the content on the Websites by including additional language to the so-called "Rip-off Reports," such as "ripoff," "fraud," and "scam," to imply that the company named in the report is "ripping off" the consumer.

17.    Further, in order to improve and enhance search engine results regarding GW Equity, the Defendants edit, alter, change, and create report names and identifiers.   The Defendants' websites also provide a search function where users can search postings organized by state, including postings allegedly involving Texas residents.  In order to inflame the readers and overstate the postings, the Defendants categorize postings under several groupings, including one entitled "Corrupt Companies."

18.    Upon information and belief, the Defendants have also solicited, developed, created, written, authored, and published on the Websites numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees made at least in part in concert or conspiracy with a disgruntled former GW Equity employee using different identities to disparage GW Equity and to create the appearance that numerous businesses and clients are unhappy with GW Equity.

19.    The Defendants have published false, misleading, disparaging and/or defamatory statements about GW Equity on their above-referenced websites.   The Defendants have

developed, created, written, authored, and published on the Websites, in the form of report content, titles, and various headlines, numerous false and deceptively misleading statements of fact concerning GW Equity, its executives, and its employees. *See* Exhibit 2, Deposition Transcript of Dixon Earl Woodward, Vol. I, 236:13-237:13; Vol. II, 293:6-20, 300:2-10, 480:15-481:2.

20.     On or about November 2, 2006, the Defendants, without authorization or consent, published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants' categorized this posting under the category "Corrupt Companies" and named the posting "Gw Equity – Geneva Business Research – Geneva Companies – Geneva Marketing Services – Geneval Consulting Services ripoff defrauded my company out of $30,000 for retainer to sell my business Dallas Texas. . . The Truth about GW Equity and Geneva." A true and correct copy of this publication and posting is attached hereto as Exhibit 3 to the Affidavit of Ryan Binkley and incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

21.     On November 7, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com. The Defendants named the posting "Gw Equity, Geneva Corporate Finance, Geneva Capital Markets, wasted eight hours of my time then hit me up for $30K." A true and correct copy of this publication and posting is attached hereto as Exhibit 4 to the Affidavit of Ryan Binkley and

incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

22.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com.   The Defendants named the posting "GW Equity Wrongful Termination – Scam – perpetuating a fraud on the general public Dallas Texas." A true and correct copy of this publication and posting is attached hereto as Exhibit 5 to the Affidavit of Ryan Binkley and incorporated herein by reference.   In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

23.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com.   The Defendants named the posting "Gw Equity, Citibank, Citigroup, Citi Commerce Solutions M&A Business Consulting, paid $30,000 for an inflated analysis of company that has yielded no results New York New York." A true and correct copy of this publication and posting is attached hereto as Exhibit 6 to the Affidavit of Ryan Binkley and incorporated herein by reference. In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

24.    On November 29, 2006, the Defendants without authorization or consent published and posted false, misleading, disparaging and/or defamatory statements about GW Equity and its services on the websites located at www.ripoffreport.com and www.badbusinessbureau.com.    The Defendants named the posting "Gw Equity, Citibank, Citigroup, Citi Commerce Solutions Big company wasting Small Companies Time & Money New York New York." A true and correct copy of this publication and posting is attached hereto as Exhibit 7 to the Affidavit of Ryan Binkley and incorporated herein by reference.    In developing, creating, writing and publishing report content, titles, and various headings concerning GW Equity, the Defendants have produced original content in the so-called "Rip-off Reports" found on the Websites.

25.    The Defendants, presumably with the aid of unknown agents, have created the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." Through this so-called program, the Defendants offer to resolve disputes between targeted companies and complainants regarding published "Rip-off Reports" on the Websites if the target company pays the Defendants a sum of money.    This so-called service is offered on the Websites.

26.    GW Equity's Office of General Counsel contacted the editor of Rip Off Report known as EDitor@ripoffreport.com, which upon information and belief is an alias for Defendant Edward Magedson, via email and informed him of the presence of numerous false and misleading statements on the Websites regarding GW Equity.  The Office of General Counsel explained the falsity of the information and requested that the false and misleading statements be removed from the Websites.  In a series of emails, Magedson refused to remove the false and misleading statements and instead demanded payment for remedying the falsities pursuant to the

"Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" offered on the Websites. Mr. Binkley declined to pay for these services.

27.    The postings on the Websites have significantly disrupted and continue to cause significant disruption GW Equity's ability to conduct business in that prospective clients use Internet search engines to find information about GW Equity, but then discover the false postings regarding GW Equity. GW Equity must respond to these false, misleading, disparaging and/or defamatory comments and allegations in its dealings with existing and prospective clients. GW Equity may not have the opportunity to respond to every person who accesses the Websites because GW Equity does not know the identities of persons who access the Websites and review the false information. The Defendants' conduct has caused GW Equity to lose at least eight customers per month and has damaged GW Equity's business and reputation.

28.    The Defendants continue to pose a threat of harming GW Equity and its business through the creation, publishing, and transmission of false and defamatory statements regarding GW Equity. The Defendants have refused to comply with GW Equity's requests to remove the false postings and to delete every false statement of fact about or concerning GW Equity's business. Without knowing the identity of some of the presently unknown sources of such information, GW Equity does not have the ability to prevent others from disseminating such false, misleading, disparaging and/or defamatory comments and allegations to third parties.

## V.    CAUSES OF ACTION
### COUNT 1 – DEFAMATION/LIBEL

29.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

30.    The statements regarding GW Equity on the Websites are false. The statements pertain to GW Equity by intentionally making one or more false, misleading, disparaging and/or

defamatory comments and allegations concerning GW Equity's executives, management, employees, business methods, activities, policies, and practices.

31.    The Defendants publicly communicated false, misleading, disparaging and/or defamatory comments and allegations to third parties by disseminating such comments and allegations via the Websites on the Internet and by placing metatags on the Websites designed to publicize those false statements.

32.    The Defendants have hosted and transmitted false, misleading, disparaging and/or defamatory comments and allegations to such third parties on the Websites knowing the same were false or with a high degree of awareness that the same were probably false, or with a reckless disregard for the truth.

33.    The Defendants disseminated false, misleading, disparaging and/or defamatory comments and allegations with the intent to damage the business, goodwill, and professional reputation of GW Equity.

34.    The Defendants' false, misleading, disparaging and/or defamatory comments and allegations have caused general defamation damages to GW Equity by exposing it to contempt and ridicule by the third parties receiving such comments and allegations.

35.    GW Equity has also suffered special damages in the form of financial loss resulting from the effect of the Defendants' statements, relating to, among other things, lost clients.

36.    The Defendants acted maliciously by disseminating comments and allegations with wanton disregard for GW Equity's rights, and with the intent to defame and injure GW Equity.

37.    The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients. Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

38.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

## COUNT TWO – INTERFERENCE WITH BUSINESS RELATIONSHIPS

39.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

40.    The Defendants have created, solicited, and published on the Websites false and defamatory statements regarding GW Equity that have interfered with GW Equity's business relationships with its existing and potential clients.

41.    These false and defamatory statements have been communicated with the knowledge that clients and potential clients had an existing or prospective business relationship with GW Equity and with the intention of interfering with that relationship.

42.    The Defendants' wrongful interference with GW Equity's business relations has been willful and deliberate and has caused GW Equity to incur loss and damages.

43.    The Defendants' conduct has caused damages and will continue to cause damages to GW Equity in the form of lost clients. Further, the Defendants' publishing of false,

misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. Defendants' conduct entitles GW Equity to injunctive relief.

44.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities.  By reason of the foregoing, GW Equity has been injured in an amount not yet ascertained and is entitled to monetary and equitable remedies.

### COUNT THREE – TEXAS BUSINESS DISPARAGEMENT

45.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

46.    The acts and conduct of the Defendants as alleged above in this Complaint constitute injurious falsehood or business disparagement under Texas law.

47.    The Defendants published false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services.

48.    The Defendants' false, misleading, disparaging and/or defamatory words, statements, and comments were published without GW Equity's consent and with a lack of privilege.

49.    The Defendants published the false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services with knowledge of the falsity of the words, statements, or comments or with reckless disregard for the words, statements, and comments' falsity.

50.    The Defendants' conduct as alleged above has caused special damages and will continue to cause special damages to GW Equity in the form of lost sales to potential clients.



Further, the Defendants' publishing of false, misleading, disparaging and/or defamatory words, statements, and comments about GW Equity and its services has played a substantial part in inducing others not to deal with GW Equity with the result that GW Equity has suffered special damages, in the form of the loss of trade or other dealings. The Defendants' conduct entitles GW Equity to injunctive relief.

51.    Unless the Defendants are restrained and enjoined, the Defendants will continue to harm GW Equity irreparably, thereby further damaging GW Equity and impairing GW Equity's business reputation and activities. By reason of the foregoing, the Plaintiff has been injured in an amount not yet ascertained, and is entitled to monetary and equitable remedies.

### COUNT FOUR – CIVIL CONSPIRACY

52.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

53.    The Defendants and unknown agents have had a common design by means of concerted action to solicit, develop, create, and publish on the Websites false and misleading statements regarding GW Equity.

54.    The Defendants and unknown agents have solicited, developed, created and published on their Websites such false and misleading statements.

55.    The Defendants and unknown agents have created the "Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program." Through this so-called "program," the Defendants offer to attempt to resolve disputes between targeted companies and complainants regarding published "Rip-off Reports" on the Websites. This so-called service is offered on the Websites.

56.    Representatives of GW Equity informed Magedson of false statements regarding GW Equity on the Websites. Magedson demanded payment and participation in the Defendants'



"Rip-off Report Corporate Advocacy Business Remediation & Customer Satisfaction Program" before taking any action to remedy the false and misleading statements.

57.     These actions constitute a civil conspiracy to use coercion to obtain GW Equity's property.  These actions also constitute a civil conspiracy to create, solicit, and publish false, misleading, disparaging and/or defamatory statements regarding GW Equity.  These actions have caused GW Equity to incur loss and damages and entitle GW Equity to compensatory and punitive damages in an amount to be determined at trial.

### COUNT FIVE – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. § 1962(C)

58.     GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth herein.

59.     Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

60.     Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

61.     Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

62.     Magedson was employed by or associated with an enterprise, Xcentric, and did conduct or participate, directly or indirectly, in the conduct of affairs of Xcentric through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the



Defendants created and/or solicited.  This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants.  The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites.  This conduct amounts to wire fraud under 18 U.S.C. § 1343.

63.    The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage.  GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

64.    Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests.  Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

### COUNT SIX – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962(D)

65.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

66.    Xcentric is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

67.    Magedson is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

68.    Xcentric is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(c), which enterprise engaged in and the activities of which affected interstate commerce during the relevant times.

69.    Magedson was employed by or associated with an enterprise, Xcentric, and conspired with Xcentric within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c). The Defendants and one or more unknown agents did conspire to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), through the following acts:

(a) The Defendants have repeatedly attempted to obtain GW Equity's property, without its consent, through the wrongful use of actual or threatened fear by requiring payment to remedy the publication of false and defamatory statements that the Defendants created and/or solicited. This conduct amounts to extortion under 18 U.S.C. § 1951(b)(2).

(b) The Defendants have repeatedly and intentionally used their Websites as a scheme to obtain money from GW Equity and other companies by means of false and defamatory complaints created or solicited by the Defendants. The Defendants have repeatedly created, solicited, and published false, misleading, disparaging and/or defamatory statements on the Websites and sent emails requesting that GW Equity pay a fee before the Defendants would agree to take any action related to the material on the Websites. This conduct amounts to wire fraud under 18 U.S.C. § 1343.

70.    The Defendants' violation of 18 U.S.C. § 1962(c) has caused GW Equity to lose at least eight sales per month and has damaged GW Equity's business, goodwill, and reputation. The Defendants' unlawful conduct has caused damages to GW Equity, in an amount to be determined at trial, and threatens to cause additional damage.  GW Equity seeks three times its actual damages sustained, as well as other relief which is necessary and proper, including reasonable attorney's fees and costs.

71.    Because its remedy at law is inadequate, GW Equity seeks injunctive relief to protect its reputation and interests.  Unless the Defendants are restrained and enjoined, the Defendants and anonymous sources making false representations of fact about GW Equity will continue to harm GW Equity irreparably, thereby further damaging GW Equity's business reputation.

## VI.
## REQUEST FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

72.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

73.    The Affidavit of Ryan Binkley, which proves the allegations in this application for injunctive relief, is attached as Exhibit A and incorporated by reference.

74.    Defendants    Xcentric    Ventures,    LLC,    www.ripoffreport.com, www.badbusinessbureau.com, and Edward Magedson have solicited, developed, and published on the Websites numerous false and misleading statements of fact concerning GW Equity, its executives, and its employees and have essentially placed the reputation and goodwill of GW Equity in the hands of Defendants.

75.    Plaintiff GW Equity has been and will continue to suffer immediate and irreparable damage if Defendants are not enjoined during the pendency of this lawsuit from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation and from disseminating, using, or publishing confidential information regarding GW Equity.   GW Equity's remedies are inadequate to compensate it for this harm and damage.  Defendants have refused to remove false and misleading statements after repeated requests by GW Equity.  Every day that Defendants continue to disseminate, use, or publish false, misleading, disparaging and/or defamatory words and comments regarding GW Equity impacts GW Equity's business opportunities and persuades potential clients not to do business with GW Equity.  GW Equity has no ability to monitor who visits the Websites and reads the false postings.  As a result, its reputation can only suffer at the hands of Defendants.  GW Equity's only option is to respond to these false and misleading comments and allegations in its dealings with existing and prospective clients.   Once its reputation is tainted, it is virtually impossible to regain the trust of these potential clients.

76.    There is a substantial likelihood that GW Equity will prevail on the merits. Defendants have been repeatedly notified to cease and desist disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments regarding GW Equity and its services and reputation, but they have willfully continued to host such statements on the Websites with the understanding that such disparaging acts would be detrimental to GW Equity.

77.    Any harm associated by the entry of a restraining order and preliminary injunction is outweighed by the potential damage to GW Equity's goodwill and reputation.  As the operators of the Websites, Defendants will not suffer any monetary losses if they are forced to remove the false and misleading statements regarding GW Equity.

78.    Issuance of a restraining order and preliminary injunction would not adversely affect the public interest and public policy because the public interest is served by preventing the dissemination of false and misleading statements about other businesses.

79.    Plaintiff GW Equity is willing to post a bond in the amount the Court deems appropriate.

80.    The Court should enter a temporary restraining order without notice to Defendants because GW Equity will suffer immediate and irreparable injury, loss, or damage if the temporary restraining order is not granted before Defendants can be heard and there is no less drastic means to protect Plaintiff's interests. *See* FED. R. CIV. P. 65(b).

81.    GW Equity further asks the Court to set its application for preliminary injunction for hearing at the earliest possible time, and after hearing the request issue a preliminary injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VII.
## REQUEST FOR PERMANENT INJUNCTION

82.    GW Equity realleges and incorporates by reference all preceding paragraphs as fully set forth here.

83.    GW Equity further asks the Court to set its application for injunctive relief for a full trial on the issue in this application, and after the trial, to issue a permanent injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either GW Equity and its services and reputation.

## VIII.

## DEMAND FOR JURY TRIAL

84.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, GW Equity demands that judgment be entered against the Defendants as follows:

(1)    That pursuant to federal and Texas state law, the Court issue preliminary and permanent injunctive relief that the Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with the Defendants, be enjoined and restrained, during the pendency of this action and permanently from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities;

(2)    That the Defendants be required to remove the false, misleading disparaging and/or defamatory words and comments regarding either (i) GW Equity and its services or (ii) GW Equity and its reputation or commercial activities and all confidential information regarding GW Equity's intellectual property and trade secrets;

(3)    That the Defendants be enjoined from posting any further comments and statements regarding GW Equity on the Websites without GW Equity having the opportunity to first respond to the alleged author privately;

(4)    That the Defendants be required to contact and notify any and all Internet business directory providers and Internet search engines to terminate all associations, if any, between Defendants and GW Equity and that all cached pages being kept by any Internet search engine be terminated as well;

(5)    That the Defendant be required to pay three times GW Equity's actual damages for violations of 18 U.S.C. §§ 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 18 U.S.C. § 1964(c);

(6)    That GW Equity recover all damages it has sustained as a result of Defendants' defamation, business disparagement, and tortious interference with prospective contracts;

(7)    That GW Equity recover compensatory damages in an amount to be determined at trial;

(8)    That the Defendants be required to pay GW Equity's costs, expenses, and reasonable attorney's fees in connection with this action; and

(9)    That GW Equity be entitled to such other relief as this Court deems just and equitable.


Dated: June 1, 2007                         Respectfully submitted,


                                            _____
                                            John T. Cox III
                                            Texas Bar No. 24003722
                                            LYNN TILLOTSON & PINKER, L.L.P.
                                            750 N. St. Paul Street, Suite 1400
                                            Dallas, Texas 75201
                                            (214) 981-3800 Telephone
                                            (214) 981-3839 Facsimile

                                            **ATTORNEY FOR PLAINTIFF
                                            GW EQUITY, LLC**

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

GW Equity, LLC

## DEFENDANTS

Vercor, LLC, The Business Owner, LLC and David L. Perkins, Jr.

**3-07CV1128-P**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Gwinnett
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

RECEIVED

JUN 2 2 2007

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mark L. Johansen
Gruber Hurst Johansen & Hail, LLP
1445 Ross Avenue, Suite 4800, Dallas, Texas 75202
(214) 855-6800 / (214) 855-6808

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Defamation, Business Disparagement, Injunction claim arising from publication of article in newsletter.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE  Kinkeade

DOCKET NUMBER  3-07CV0976-K

DATE
6/22/07

SIGNATURE OF ATTORNEY OF RECORD
Mark L. Jo[signature]

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____